### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**TRAVIS STARR,**

      **Plaintiff,**

**v.**                                                                 **Case No. SA-20-cv-1299-JKP**

**TEXAS SKYWAYS, INC.,**
**MILDRED J. JOHNSON,**
**ERIC BRADLEY STEPHENSON,**

      **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff Travis Starr's *Motion for Partial Summary Judgment* (ECF No. 17) and Defendants Texas Skyways, Inc., Mildred J. Johnson, and Eric Bradley Stephenson's *Motion for Summary Judgment* (ECF No. 18). With the filing of the responses (ECF Nos. 20, 21) and replies (ECF Nos. 22, 25), the motions are ripe for ruling. After review of the motions, briefing, evidence, and the applicable law, the Court denies the motions.

### I. BACKGROUND

On November 5, 2020, Plaintiff Travis Starr filed suit in this Court alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., claiming that Defendants failed to pay him minimum wages. ECF No. 1. Plaintiff alleges that he was employed by Defendants' airplane engine modification company and that he was not paid wages for his work, as required by the FLSA. *Id.* at 4. On January 29, 2021, the Honorable David A. Ezra denied Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss, finding that Plaintiff's complaint was "sufficient to state an FLSA claim against Defendants as Plaintiff's alleged employer." ECF No. 14 at 5.

The case was reassigned to the undersigned on July 1, 2021. ECF No. 16. The competing motions for summary judgment request a ruling on Plaintiff's employment status with Texas Skyways. Plaintiff contends he was an employee. Texas Skyways, Mildred J. Johnson, and Eric Bradley Stephenson contend Plaintiff was either a volunteer or an independent contractor.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion," but "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

### III. DISCUSSION

Plaintiff and Defendants' motions for summary judgment ask the Court to decide whether Plaintiff was an employee of Defendants for purposes of the FLSA. The parties agree that Texas Skyways did not pay or otherwise compensate Plaintiff during the time he worked for the company. ECF Nos. 17 at 8; 17-1 ¶ 12; 18 at 1-2. Plaintiff contends that as a test pilot and Skyways' director of operations, he was under the economic control of Defendants and, on balance, the *Silk*[1] factors, employed by the Fifth Circuit, weigh in favor of finding he was an employee of Texas Skyways. ECF No. 18 at 5-8. Defendants contend the *Silk* factors weigh against finding Plaintiff was an employee because "there was never any agreement" that Plaintiff would be paid for work and in three years of "hanging around the facility at times of his own choosing," "occasionally test flying an airplane," and calling himself "director of operations," Plaintiff never asked to be paid. ECF No. 18 at 1-2, 6.

#### A. Applicable Law

With exceptions not relevant here, the FLSA requires employers to pay their employees who are "engaged in commerce or in the production of goods for commerce," or "employed in

---

[1] *United States v. Silk*, 331 U.S. 704, 712 (1947).

an enterprise engaged in commerce or in the production of goods for commerce, wages [at the rate set by congress]." 29 U.S.C. § 206.

**B. Employer**

The minimum wage provisions of the FLSA apply to "employers." 29 U.S.C. § 206(a). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine whether an individual or entity is an employer subject to the provisions of the FLSA, courts consider four factors. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). Not every element must be present in order to find employer status. *Id.* at 357.

The record evidence in this case shows all four elements. Defendants (1) had the power to hire and fire employees, (2) supervised and controlled the schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. ECF No. 20-3 (Johnson Dep. 9:21-16:2). Defendants chose to allow Plaintiff to work at Texas Skyways, to set his own schedule, to sign the updated employment policy, and to work without pay. Defendants nonetheless had the power to prevent Plaintiff from signing the policy update and test-flying airplanes, conferring with its customers on company projects, or doing any other work for Texas Skyways. Accordingly, Defendants are properly classified as employers under the FLSA.

**C. Employee or Independent Contractor**

"To determine if a worker qualifies as an employee, [courts] focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 275 (5th Cir.

2020) (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)). To assist in the inquiry, courts consider five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; (5) and the permanency of the relationship.

*Id.* "No single factor is determinative, and the ultimate determination of whether an individual is an employee within the meaning of the FLSA is a question of law." *Id.* (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043–45 (5th Cir. 1987)); *accord Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378-79 (5th Cir. 2019).

"The five tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976). "[I]t is not what [the alleged employee] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Id.* at 380 (emphasis in original). "[E]conomic realities are reflected by the way one actually acts." *Usery*, 527 F.2d at 1312. The parties may point to evidence "relevant to their competing theories of the nature of [their] relationship," but "ultimately, no matter what was promised or documented, what will be dispositive under the FLSA will be how the parties in reality behaved." *Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867-JKP-ESC, 2019 WL 6606530, at *6 (W.D. Tex. Dec. 5, 2019) *aff'd* 2020 WL 1083825.

As an initial matter, the Court notes that the ability of a worker to financially support him or herself independent of the job at issue or whether an alleged employee's salary from another job is sufficient to financially support him or her is not relevant to whether the worker is an

employee of the alleged employer. While the reliance on an alleged employer for subsistence may weigh in favor of employee status, the fact that an alleged employee does not need to be paid by the alleged employer in order to survive does not weigh against employee status. Additionally, the fact of other employment, standing alone, is not dispositive of "economic reality"—a worker may have multiple jobs doing similar work for different companies and not be an independent contractor.

### 1. Control

Factors relevant to control include (1) whether the alleged employee or alleged employer imposes rules or restrictions; (2) who makes advertising decisions; (3) who sets the prices, makes payment arrangements, manages the books and back-office activities; (4) whether any contract between the alleged employee and employer is arms-length; (4) whether the alleged employee can provide services to or negotiate with other businesses; (5) whether the alleged employee engages in the ordinary activities of running a business such as hiring employees, setting hours, making policy, instituting procedures; (6) the degree to which the alleged employee exerts control over their business life independent of the alleged employer, i.e., whether the alleged employee has a "viable economic status that can be traded to other [ ] companies." *Usery*, 527 F.2d at 1312–13. In sum, who controls the "meaningful aspects" of the business. *Id.* If the meaningful aspects of the business—advertising, dealing with other businesses, price setting, payment arrangements—are controlled by the alleged employer, it is likely the alleged employee is under the alleged employer's control. Conversely, when the alleged employee "exerts such a control over a meaningful part of the business that she stands as a separate economic entity" it is likely the alleged employee is not controlled by the alleged employer. *Id.*

Here, all the meaningful aspects of the business were controlled by Defendants. Plaintiff test-flew airplanes, worked on assigned tasks or projects, and liaised with customers. Johnson Dep. 17:1-3; ECF No. 20-1 (Starr Dep. 11:5-16); ECF No. 18-1 (Stephenson Dec.); ECF No. 20-4. It is undisputed that Plaintiff set his own hours and that during the alleged employment period he also worked as a pilot for a commercial airline. Defendants contend that Plaintiff was not required to be at the facility at any particular time; he showed up "when he wanted" and "could leave anytime he wanted"; and he "showed up sporadically, usually without any advance notice to the company." ECF No. 18-1 at 45. Plaintiff contends he negotiated his schedule with the commercial carrier in order to be available to Texas Skyways. Specifically, he flew for the commercial carrier Friday through Sunday, in order to "be at Texas Skyways" the rest of the week. Starr Dep. 8:19-23.

On June 25, 2020, Plaintiff signed an "Employee Agreement Update." ECF No. 20-2. The updated policies include:

1. Access to hangars outside of business hours, to include nights and weekends, *must be approved in advance*. This includes all hangars regardless of whether your access is aviation-related.

2. Alcohol around the workplace is a liability, especially when in an aviation environment. There will be no opening, storing, or consuming of alcohol during business hours. There are no exceptions.

3. No company or customer information, tools, or products can leave the business area *without prior approval*.

4. All purchases over $50 *require approval* before the purchase is made.

5. All purchases made with company funds, or when using the company discount, must be shipped to Texas Skyways and recorded in the Receiving logbook.

6. No outbound shipping of any parts can occur without a review from another employees [sic]. This includes, but is not limited to, engines, components, gauges, parts, and cores (to avoid errors).

7. Every member of Texas Skyways should be committed to recycling. All plastics, steel and aluminum. There is a recycling can located in the main hangar for plastics, and for aluminum in the back hangar.

8. All work performed on aircraft not owned by Texas Skyways must be billable, when inside the hangars, during business hours, or if using company resources (tools and materials) unless given pre-approval. Work on non-company items such as aircraft, vehicles or lawnmowers within company facilities *is not allowed*.

9. *The contents of every hangar should be considered company's*, except for customer aircraft and personal tools inside the toolbox that you own. No company items in any of the hangars can be given away, exchanged, discounted, or sold, *without approval, which must be received in advance*.

If Mickey is not present, and cannot be reached after 4 hours, you can contact Woody *to request an exception* to the above policies.

Violating these items can result in *disciplinary action*.

*Id.* (emphases added). Plaintiff signed the document on the same date six others signed. Defendants contend Plaintiff signed the document simply because he happened to be present when the document was circulated. Johnson Dep. 34:21-37:20; Stephenson Dec. at 46.

Defendants characterize Plaintiff's presence at Texas Skyways as hanging around—"Mr. Starr was allowed to hang around the company because his wife Natalie worked there and because he was friends with Jack Johnson (Jack), Mickey's late husband and co-founder of the company." Stephenson Dec. ¶ 5; Johnson Dec. ¶ 5. A friend that hangs around a workplace does not typically test-fly the company's or its customer's airplanes, discuss technical specifications of a customer's project with the customer, or file company paperwork with a government agency. Stephenson Dec. ¶ 5; Johnson Dec. ¶ 5; ECF No. 20-4; Starr Dep. 17:14-19.

## 2. Relative Investments

Analysis of the relative investment factor involves comparing "each worker's individual investment to that of the alleged employer." *Hopkins*, 545 F.3d at 344. After conducting the side-by-side comparison in *Usery*, that court concluded that without the alleged employer's

"provision of all costly necessities," the alleged employees "could not operate." *Usery*, 527 F.2d at 1314. The court's review of the facts confirmed the alleged employees' "total dependency" on the alleged employer and therefore the relative investment factor weighed in favor of finding the workers were employees. *Id.* And while the court in *Carrell v. Sunland Const., Inc.*, recognized that the alleged employer's "overall investment in each pipeline construction project was obviously significant," it concluded the relative investment factor weighed in favor of finding the "Welders" working on the pipeline were independent contractors (IC) because they "supplied their own welding equipment; and their investments in welding equipment averaged $15,000 per Welder," 998 F.2d 330, 333 (5th Cir. 1993).

Aside from purchasing his own business cards and replacing the time-clock at his own expense, there is no evidence that Plaintiff made any financial investment in Texas Skyways or in any tools or equipment that were required to complete the work he did for the company. Starr Dep. 30:17-23; Johnson Dep. 26:12-27:18; Stephenson Dec. ¶ 6.

**3. Opportunity for Profit or Loss**

This factor examines "the degree to which the worker's opportunity for profit or loss is determined by the alleged employer." *Hopkins*, 545 F.3d at 343 (citing *Herman v. Express Sixty–Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998)). In other words, who "controlled the major determinants of the amount of profit which the worker could make." *Id.* at 344. In Fifth Circuit cases, "major determinants" have included a worker's "ability to control their own costs," *Carrell*, 998 F.2d at 334, and a worker's ability to control "customer volume" or other elements of the sales cycle that play a "vital role" in the opportunities to increase profit, *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983). Examples of major determinates have also included the worker's ability to "determine the days and times that they were available to work;"

the worker's ability to work efficiently; the worker's proficiency in performing the job; the worker's ability to profit from performing other or additional work for customers; and the worker's ability to "market himself." *Eberline v. Media Net, L.L.C.*, 636 F. App'x 225, 228 (5th Cir. 2016).

Based on the work Plaintiff did at Texas Skyways, there is no evidence that, had Defendants paid Plaintiff, he would have had opportunities to or played a vital role in increasing profits. While he took credit for the sale of one airplane, Starr Dep. 17:13-19, the tasks Plaintiff undertook at Texas Skyways do not allow the inference that Plaintiff was in sales or that he was an integral part of a sales team. There is no evidence that Plaintiff incurred significant costs associated with the tasks he performed at Texas Skyways, nor is there any evidence that his increased proficiency or efficiency could have impacted his ability to profit from his work with Texas Skyways.

**4. Skill and Initiative**

Skill and initiative have been measured by an alleged employee's "unique skill set, or some ability to exercise significant initiative within the business." *Hopkins*, 545 F.3d at 345. The Fifth Circuit has found that certain types of welding require "specialized skills." *Carrell*, 998 F.2d at 333. And while "splicing" was learned "through an informal apprenticeship" a specific worker's ability to learn the skill quickly derived from previous work as a mechanic and a "mechanical aptitude." *Thibault v. BellSouth Telcoms., Inc.*, 612 F.3d 843, 847 (5th Cir. 2010). In both cases, the worker's ability to find consistent work by moving from job to job showed initiative. Skills that are deployed doing routine work, and those that are "common to all employees in that position" are likely to "counsel against" finding that a worker is an independent contractor. *Hopkins*, 545 F.3d at 345.

To the outside observer, test-flying airplanes appears to involve special skills. But the parties agree that among those who perform this work, one test pilot is as good as the next. Johnson Dec. ¶ 5 ("Mr. Starr did test fly our airplanes on occasion, but we did not need him for that. We typically have personnel on hand who are licensed to fly and capable of test flying when needed.")

There is also nothing to indicate that Plaintiff's interactions with Texas Skyways customers could enrich him apart from his relationship with Skyways. Nor did any initiative enrich him. For example, Plaintiff describes a project in which he recommended that a dual exhaust project be abandoned in favor of a single exhaust and the company profited from adopting this recommendation. Starr Dep. 17:13-19 ("I got Ms. Johnson to drop that [dual exhaust] project, we put a single-engine exhaust back on it, I filed the paperwork with the FAA to put it back into a utility class airplane, she sold it for $139,000."). Plaintiff's comment, "And you're welcome, Ms. Johnson" suggests he was not financially rewarded for this initiative.

### 5. Permanency

In evaluating this factor, courts have considered exclusivity; length of the relationship; how easily a worker could terminate the relationship and then compete against the alleged employer; whether work was performed on a project-by-project basis; and if the worker moved from job to job, company to company, or state to state. *See Hickey*, 699 F.2d at 752; *Carrell*, 998 F.2d at 332; *Hopkins*, 545 F.3d at 346; *Thibault*, 612 F.3d at 846; *Parrish*, 917 F.3d at 386.

As to exclusivity, it is undisputed that during the relevant time period, Plaintiff was an employee of the commercial carrier. As an employee for the commercial carrier, Plaintiff was not prevented from working wherever he wanted on his days off, including working as a pilot, so long as he did not exceed his FAA limits. Starr Dep. 9:2-12. As to the length of the relationship,

whether characterized as "hanging around" or "working for" Texas Skyways, Plaintiff consistently "showed up" for at least two years. Johnson Dep. 23:11-12. And as to itinerancy, Plaintiff worked on "projects" such as the "Cessna 172 project" but did not work on a project-specific basis, nor did he move from job to job, company to company, or state to state. *Id.* 11:5-16; 17:8-19;

Defendants argue that there is no genuine issue of material fact with respect to Plaintiff's alleged employment status because during the time he alleges he was an employee with Texas Skyways, Plaintiff was employed as a pilot with United Airlines and was never "economically dependent" on Skyways; Plaintiff never applied for a job with Skyways and there is no paper that indicates an employment relationship was formed; he had no work schedule but "came around" and "left whenever he wanted to." ECF No. 18 at 4-6 (citing Starr Dep.; Stephenson Dec.).

*Silk* and its progeny counsel against rigid application of the five factors. Like the employees in *Silk*, Plaintiff's flexible work schedule is not significant. Plaintiff and Johnson's depositions evince different perspectives on the nature of their relationship, but what is "dispositive under the FLSA [is] how the parties in reality behaved." *Flynn*, 2019 WL 6606530, at *6. By his signature, Plaintiff agreed to abide by Texas Skyways policy. Defendants were in a position to exercise all necessary supervision over Plaintiff; that Defendants chose not to exercise such supervision does not alter the quality of the relationship. Moreover, Plaintiff testifies that Jack hired him and taught him everything he needed to know, "both as a test pilot and as director of operations" and Defendants' testimony provides no contradiction. Starr Dep. 28:23-29:7; ECF No. 17 at 6.

Plaintiff told customers he was "operations manager" and Defendants did not publicly object. Johnson Dep. 28:1-18. Plaintiff exchanged substantive emails with Texas Skyways

12

customers—emails that were sent to a Texas Skyways email address and placed in Plaintiff's "small little box" at the company—and Defendants did not object. Johnson Dep. 21:15-22:11. Even though there were other test pilots available to test fly Texas Skyways planes—who, arguably, would have been paid—Defendants were happy to "allow" Plaintiff to conduct test flights for free. Johnson Dec. ¶ 5. Plaintiff's tasks were done in the course of Texas Skyways business. These behaviors are typical of an employee-employer relationship and support a finding that Plaintiff was not an independent contractor but rather an employee of Texas Skyways. *Silk*, 331 U.S. at 718.

**D. Employee or Volunteer**

**1. Promise or Expectation of Compensation**

Defendants' motion for summary judgment contends that Plaintiff is not entitled to FLSA protections because he was either an independent contractor or a volunteer. As discussed above, the Court finds that Plaintiff was not an independent contractor.

Under the FLSA, the statutory definition of "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). And "employ" is defined as "to suffer or permit to work." *Id.* § 203(g). The Supreme Court has held that these definitions are "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another" nor do the definitions "sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728–29 (1947); *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471

U.S. 290, 295 (1985). Under this precedent and the persuasive opinions in sister circuits,[2] the Court looks for evidence that Plaintiff was promised compensation or expected to be compensated for his work. However, the record contains little evidence from which the Court can determine whether Plaintiff reasonably expected to be compensated and should be classified as an employee or if Plaintiff had no expectation of compensation and should be classified as a volunteer.

The evidence tends to show that any compensation agreement regarding Plaintiff's work for Texas Skyways was made verbally between Plaintiff and Jack Johnson, who is now deceased. Starr Dep. 12:2-12; 13:4-6; 29:1-7. Consequently, Jack Johnson is not available to testify as to any understanding between himself and Plaintiff regarding if, how, or when Plaintiff would be compensated for his work for Texas Skyways. On March 11, 2020, Plaintiff and Defendant Mildred  Johnson entered into a "Real Estate Purchase Agreement for Texas." The agreement

---

[2] *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445, 456 (4th Cir. 2021) (affirming the district court properly articulated the standard as requiring review of the "totality of the circumstances" and finding that the district court was correct in focusing its analysis on the principal purpose of the relationship—a primary benefit to the alleged employee was indicative of volunteer status and where the alleged employer received most of the benefit from the relationship, this was indicative of employee status); *Sec'y United States DOL v. Bristol Excavating, Inc.*, 935 F.3d 122, 138 (3d Cir. 2019) (approving a "holistic consideration of the particular facts of each case" when the question is "whether there has been a course of dealing sufficient to characterize [a third party incentive bonus] as one that is legitimately expected by the employees and legitimately understood as being sponsored in a meaningful way by the employer"); *Rhea Lana, Inc. v. United States Dep't of Labor*, 925 F.3d 521, 526 (D.C. Cir. 2019) (finding that when deciding whether the alleged employees should be classified as volunteers, the Department of Labor "correctly employed a totality-of-the-circumstances approach" and, "importantly, the Department carefully considered whether the workers had an expectation of compensation in exchange for their services . . . [and] examined the degree of control exercised by the employer and the extent to which the workers' services were integral to [the] business"); *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 763 (6th Cir. 2018) (citing *Alamo*, 471 U.S. at 302 and *Walling*, 330 U.S. at 152 and focusing the analysis on the expectation of compensation, to wit: "to be considered an employee within the meaning of the FLSA, a worker must first expect to receive compensation"); *Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 163 (2d Cir. 2014) (the court's determination of whether the public agency volunteer exception applied was "based on the totality of circumstances"); *see also Biziko v. Van Horne*, No. 1:16-CV-0111-BP, 2019 WL 3928575, at *15 (N.D. Tex. Aug. 20, 2019), report and recommendation adopted, No. 1:16-CV-111-C, 2019 WL 4192458 (N.D. Tex. Sept. 4, 2019), *aff'd*, 981 F.3d 418 (5th Cir. 2020) (in which the court reviewed "the objective facts surrounding the services performed to determine whether the totality of the circumstances establish[ed] volunteer status, or whether, instead, the facts and circumstances, objectively viewed, are rationally indicative of employee status") (quoting *Cleveland v. City of Elmendorf*, 388 F.3d 522, 528 (5th Cir. 2004) (quoting *Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011)) (opinions addressing FLSA coverage in the public employment context).

stated in part that Plaintiff would continue to serve as Texas Skyways' Director of Operations for two years for the sum of $50,000 per year. ECF No. 17-2 at 8. From this, a reasonable fact finder could infer that Plaintiff was regarded as the Director of Operations for Texas Skyways and that he expected and was promised compensation. The record evidence does not show whether this transaction contemplated deferred compensation for past work or was only for prospective work. The evidence makes clear that prior to filing this lawsuit, Plaintiff never asked to be paid for his work at Texas Skyways. However, that fact alone is not dispositive of whether an individual is classified as an employee or a volunteer. Consequently, fact issues remain as to whether Plaintiff expected to be compensated, which must be resolved before the legal question of employee or volunteer can be determined.

Once the record is further developed on this issue, it may be the case that the totality of the circumstances demonstrate that Plaintiff never wanted or expected to be paid and worked at Texas Skyways simply for the sheer joy of it. As the record stands, whether Plaintiff should be classified as an employee or as a volunteer cannot be determined as a matter of law without resolving the factual disputes.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff Travis Starr's *Motion for Partial Summary Judgment* (ECF No. 17) and **DENIES** Defendants Texas Skyways, Inc., Mildred Johnson, and Eric Stephenson's *Motion for Summary Judgment* (ECF No. 18).

**It is so ORDERED this 2nd day of February 2022.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**